December 5, 1910.

———————o———————

5115.

(Court of Appeal, Parish of Orleans).

## DIANA BRICK & TILE CO. vs. FIDELITY & DEPOSIT COMPANY OF MD.

1. A bond executed by a building contractor to secure workmen and furnishers of material, in a case not within the terms of Act 180 of 1894, may be enforced as a conventional obligation.
2. In order that a surety on a building contract may be discharged on the plea that the contract or specifications were altered, such alteration must be shown to have been material and substantial and to have operated to the surety's prejudice.
3. Where the amount of plaintiff's claim, though susceptible of certain and exact proof, is sougt to be established by mere estimates, the lowest estimate will be adopted as showing the true amount.

Appeal from the Civil District Court, Division "A."

Sol. Wolff, for plaintiff and appellee.

Morgan & Milner, for defendant and appellant.

GODCHAUX, J.—Plaintiff sues upon a claim for brick used in the construction of a building, defendant being the surety upon a bond given by the building contractor, Malkus, for the faithful performance of the contract and for the payment by him for all claims for labor, material, etc.

The defense urged by the defendant that the bond is unenforceable because not a statutory bond, and the further defense that material-man has no individual right of action upon the bond, have recently been passed upon by the Supreme Court in a controversy between the present defendant and another material-man arising out of the construction of this same building under the identical contract and bond as are set up here; and it was held that though the bond was not a statutory one, still it was enforceable as a conventional obligation, which by its express terms conferred an individual right of action upon and in favor of each material-man against the surety.

> Lake Charles Plaining Mill Company, Ltd., vs.
> Grand Lodge I. O. O. F. et al., Nos. 18,346 and
> 18,494 of the docket of the Supreme Court,
> not yet reported.

As to the other issues raised in this case, they are succinctly set out and passed upon in the following excerpts from the written reasons accompanying the judgment of the lower court:

> "The bricks were shipped from plaintiff's establishment in Texas and for the freight charges paid by Malkus, the contractor, plaintiff was to give him credit on the bill.

"Malkus, in May, 1907, wrote to plaintiff requesting plaintiff to draw on him for the amount of its bill, and enclosed the receipted freight bills to plaintiff for which he was credited on the shipments.

"He thus acknowledged the plaintiff's account, in writing, though by an error of calculation, stated his indebtedness at $480.82 when the proper figures were $474.82.

"Comparing the freight bills with plaintiff's account it will be seen that the quantity of brick shipped in the three car-loads, say 10,960; 9,440 and 9,920, is precisely the same in each; and a further comparison shows that the amount of the freight bills paid by Malkus on these three shipments tallies with the credits for such freight payments on plaintiff's account, to-wit: $30.67; $27.60; $27.83. No objection was made that the signature of Malkus was not proved, but only a technical objection that went to the effect, as evidence, of the two letters offered and received in evidence. It was proved that both letters and the three freight bills were received by plaintiff, in due course of mail, from Malkus.

"In my view, these two letters and the three freight bills prove the truth of plaintiff's account.

"In Addition, to the answer of the witness, Davidson, to the last cross-interrogatory, shows that Malkus received the bricks and that they were used in the building while he was in charge of its construction as contractor.

"It is proved that plaintiff shipped no other brick; that none other were used in the building and that all the brick used were branded "DIANA," the name of plaintiff company.

"I do not see how the correctness of plaintiff's bill can be disputed.

"Defendant argues that the contract for the building and the specifications do not call for 'pressed brick,' and that the proof shows that pressed brick were furnished .

"The contract specifications mention common brick. The bricks required by the specifications, page 6, **verbo**, 'Brick Work,' are described as 'the best selected common brick to be had on the market. They shall be of the best quality, hard burned brick, they shall be regular in shape, and give a ringing sound when struck. They shall be carefully assorted to size and color' and again 'best quality straight hard burned bricks.'

"If the contractor and the owner of the building and the architect accepted plaintiff's bricks as answering these requirements, I do not see that defendant can complain, since it is not proved that 'pressed bricks' are different from the specification bricks, or that they cost more or less than the latter.

"The defendant does not plead that the contract was altered without its consent to its prejudice, and defendant does not prove any injury or substantial alteration.

"In this case I find no plea of alteration of specification to defendants prejudice and no proof of injury to it, even. if pressed brick,' and the brick described in the specification were not practically and reasonably the same. It is no case for judicial cognizance without proof, and there is no proof.' "

The foregoing opinion fully covers and disposes of the issues raised below, and we adopt it with the exception alone that it fails to note one incident in the proof which requires as an amendment of the judgment with respect to the amount of the recovery allowed. While it it is proved that plaintiff's bricks were ordered for and

used in the construction of the building, the testimony of plaintiffs' witnesses upon this point is to the effect that of the bricks for which recovery is sought, four or five thousand were not used at all in the erection of the building but are presently lying unused near the completed structure.

As the bond does not extend defendant's liability for material beyond such as was actually used in the building, the judgment appealed from, which allowed the whole amount claimed, must suffer a deduction to the extent of the price of the unused brick. Plaintiff's witnesses fixed the number of the unused brick at "four or five thousand" and this is the only testimony on the subject. As the burden of establishing the number of brick used rested upon the plaintiff and as greater certainty in this respect was easily available by actual count or otherwise, the court will adopt the highest estimate, namely, five thousand, as the correct one. The bricks were sold at $18.50 per thousand less $2.84 per thousand freight, i. e., a net price of $15.66 per thousand, making a total credit of $78.30 to which defendant is entitled upon the judgment for the five thousand bricks that were not used.

It is accordingly ordered that the judgment appealed from be amended by reducing the principal amount thereof from $474.82 to $396.52 and as thus amended and in all other respects it is affirmed, appellant to pay the costs of the lower court, and appellee the costs of appeal.